UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ERIKA M. LANGENBACH,

        Plaintiff,

v.

                                  Case No. 12-CV-1019

WAL-MART STORES, INC.,

        Defendant.

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## INTRODUCTION

Erika Langenbach was a loyal Wal-Mart employee, dedicating over a decade of her life's energy and passion into her work. This dedication was reflected in her positive evaluations and ultimate promotion to an Assistant Manager position at the West Bend, Wisconsin location. Despite Plaintiff's early interest in management, she waited an inordinate amount of time to get into management and was never promoted past Assistant Manager. On the other hand, male employees were promoted more quickly and as a result received higher wages and bonuses than their female counterparts, including Plaintiff.

Undeterred, Plaintiff continued to work hard and planned on staying with Wal-Mart until she retired. Unfortunately, Plaintiff was diagnosed with a cyst on her kidney and fibroid tumors in her uterus in April 2010. Accordingly, Plaintiff requested leave pursuant to the Family and Medical Leave Act ("FMLA"). Following her request for leave, everything changed. For example, while on leave, Plaintiff was rotated to the more physically demanding third-shift. Then, a week or two after returning from leave, Plaintiff received an overall performance rating of "Development Needed" in her mid-year evaluation review by management. This was the lowest rating she had *ever* received as an Assistant Manager. Within weeks of this negative

performance rating, she was placed on a disciplinary Performance Improvement Plan ("PIP"). Despite her efforts to appease management's "concerns", Defendant fired her. In an effort to conceal its discrimination, Defendant claims that Plaintiff was terminated because she allegedly proved to be "ill-suited" for her position. Not only is this excuse not credible in light of Plaintiff's lengthy employment history with Defendant, but Plaintiff's negative performance rating and PIP came on the heels of her return from protected leave. Because of the litany of disputes of material fact, Defendant's motion should be denied.

## SUMMARY OF RELEVANT FACTUAL BACKGROUND[1]

### A. Plaintiff's Employment History.[2]

Plaintiff began her employment with Wal-Mart in September of 1998 as a third-shift stocker. (Defendant's Proposed Findings of Fact ("Def.'s PFOF") ¶ 5.) She consistently received positive evaluations. (Plaintiff's Proposed Finding of Facts ("Pl.'s PFOF") ¶ 1.) In 1999, she was promoted to the Jewelry Department as a Sales Coordinator (Def.'s PFOF ¶ 6), and then promoted again to Jewelry Department Manager. (Def.'s PFOF ¶ 7.) By all accounts, she was an exemplary department manager. (Pl.'s PFOF ¶ 3.)

Following successful completion of the Management in Training Program ("MIT Program") Plaintiff was assigned to the West Bend Wal-Mart store. (Def.'s PFOF ¶ 11.) The West Bend location was known as a "country club" store or "boys club." (Pl.'s PFOF ¶ 9.) Male employees were regularly hired and promoted outside of the customary interview process,

---

[1] Plaintiff respectfully requests that the Court refer to Plaintiff's Proposed Findings of Fact in Opposition to Defendant's Motion for Summary Judgment for a more detailed narrative of the facts.

[2] At all times relevant to this action, the Market Human Resource Manager was Joanne Massopust, the Store Manager of the Wal-Mart Store #2658, located in West Bend, Wisconsin was John Michael Dooley and the Shift Managers were Dan Wilds, John K. Fitzgerald, Courtney Wilcox and Adam Zastrow. (Pl.'s PFOF ¶ 18.)

2

allowing them to leapfrog equally qualified, or even more qualified, female employees. (Pl.'s PFOF ¶ 11.)[3] As an Assistant Manager, Plaintiff received an overall performance rating of "Solid Performer" on both her 2009 and 2010 annual evaluations. (Def.'s PFOF ¶¶ 16, 23.)

## B. **Plaintiff's Medical Condition and FMLA Leave.**

In April of 2010, Plaintiff was diagnosed with a cyst on her kidney and fibroid tumors in her uterus. (Def.'s PFOF ¶ 31.)   The treatment plan for Plaintiff's condition involved three separate surgeries.  (Pl.'s PFOF ¶ 31.)  In April 2010, following her doctor's appointment, Plaintiff discussed her need to take medical leave with Defendant. (Pl.'s PFOF ¶ 32.)  Plaintiff submitted a FMLA request form for leave from July 30, 2010 until August 26, 2010.  (Def.'s PFOF ¶ 36.).  On the date Plaintiff was supposed to return, Plaintiff's doctor would not release her to do any lifting since her wounds had not fully healed.  (Pl.'s PFOF ¶ 37.)  Despite not being fully recovered, Plaintiff went into work to complete her scheduling duties.  (Pl.'s PFOF 38.)  Plaintiff followed up with the Market HR Manager Joanne Massopust about returning despite the lifting restriction, but was told that she should not to return to work until she was one hundred percent. (Pl.'s PFOF ¶¶ 39, 41).

## C. **Defendant's Retaliatory Actions.**

While on FMLA leave, Plaintiff learned that she had been reassigned to the less desirable third, overnight shift.  (Pl.'s PFOF ¶ 43.)  Not only were there other managers who had not yet taken the overnight rotation, (Pl.'s PFOF ¶ 44) but the third shift is physically more demanding. (Pl.'s PFOF ¶ 46.)  Besides being placed on third shift while on leave, within one to two weeks from her return from leave, Shift Manager John Fitzgerald conducted her yearly performance evaluation.  (Def.'s PFOF ¶¶ 54, 63.) This was surprising to Plaintiff since Fitzgerald was not

---

[3] Notably, following her own deposition in this case, shift manager Courtney Wilcox made a gender discrimination complaint against store manager John Dooley. (Pl.'s PFOF ¶ 14.)

even on her same shift. (Pl.'s PFOF ¶ 49.) Plaintiff received an overall performance rating of "Development Needed." (Def.'s PFOF ¶ 58.) Prior to this evaluation, Plaintiff never received an Overall Performance Rating below "Solid Performer." (Pl.'s PFOF ¶ 50.)

Shortly thereafter, Plaintiff received a PIP from Courtney Wilcox. (Def.'s PFOF ¶¶ 64, 67.) Plaintiff was given the choice to either continue on the PIP, or to step down to a Zone Manager position. (Def.'s PFOF at ¶ 69.) She declined to step down because the reasons for the PIP were not true, and could be easily remedied. (Def.'s PFOF at ¶ 70; Pl.'s PFOF ¶ 69.) Plaintiff also felt that her PIP was retaliatory for taking FMLA leave. (Pl.'s PFOF ¶ 54.)

On March 1, 2011, Mike Dooley, John Fitzgerald and Courtney Wilcox conducted Plaintiff's final PIP evaluation. (Def.'s PFOF ¶ 91.) She was told in part that she was "too nice" to be a manager. (Pl.'s PFOF ¶ 63.) At the end of this meeting, Defendant terminated Plaintiff. (Def.'s PFOF ¶ 96.)

### D. Defendant Hires and Promotes Similarly or Less Qualified Male Employees.

In 2010 and 2011, Wal-Mart hired five recent college graduates who played football for Chris Meidt, Wal-Mart's Regional Manager in Wisconsin, at St. Olaf College. (Pl.'s PFOF ¶ 72.) Wal-Mart also hired another former football player, Troney Shumpert, who Meidt personally recruited to come to Wal-Mart. (Def.'s PFOF ¶ 138.) All of the football players were external recruits. (Pl.'s PFOF ¶ 73.) Three out of the five football players have already been promoted to Shift Manager. (Pl.'s PFOF ¶¶ 78, 83, 90.)

## ARGUMENT

### I. APPLICABLE LEGAL STANDARD.

Summary judgment is not appropriate unless the moving party can establish that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter

4

of law." Fed. R. Civ. Pro. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). If the moving party meets this burden, the non-moving party may produce evidence demonstrating that there is a dispute of material fact to be resolved by the jury. Id. The court must construe the evidence—and grant all reasonable inferences—in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). "Motions for summary judgment in employment discrimination cases must be approached 'with added rigor,' because credibility and intent are often central issues." Rowser v. Alliant Foodservice, Inc., 05-C-0274, 2007 WL 2156563, at *2 (E.D. Wis. July 25, 2007) (internal citations omitted.)

## II. GENUINE ISSUES OF MATERIAL FACT PRECLUDE SUMMARY JUDGMENT ON PLAINTIFF'S FMLA RETALIATION AND INTERFERENCE CLAIMS.

The Family and Medical Leave Act ("FMLA") provides an employee with the right to take twelve (12) weeks of unpaid leave throughout the year for specific medical reasons. 29 U.S.C. § 2612; Arrigo v. Link Stop Inc., ---F.Supp.2d---, 2013 WL 5498139, at *1 (W.D. Wis. Oct. 4, 2013). The FMLA further provides that an employee may take leave on a continuous or intermittent basis. 29 U.S.C. § 2612(b). The FMLA forbids an employer from interfering with and retaliating against an employee's right to exercise any FMLA rights. 29 U.S.C. § 2615(a)(1)–(2); Burnett v. LFW Inc., 472 F.3d 471, 477 (7th Cir. 2006). No proof of intent is required for an interference claim. Pagel v. TIN Inc., 695 F.3d 622, 626 (7th Cir. Aug. 9, 2012) (citation omitted). Plaintiff asserts viable claims under both theories.

### A. Genuine Issues of Material Fact Preclude Summary Judgment on Plaintiff's FMLA Retaliation Claim.

The FMLA prohibits an employer from retaliating against an employee for exercising their FMLA rights. 29 U.S.C. § 2615(a)(2); Breneisen v. Motorola, Inc., 512 F.3d 972, 978 (7th Cir. 2008). Indeed an employer is prohibited from using "it as a negative factor in hiring,

5

promotions, or disciplinary actions." Breneisen, 512 F.3d at 978 (citing 29 C.F.R. § 825.220(c)). To prevail on her retaliation claim, Plaintiff need not prove that "retaliation was the *only* reason for her termination; she may establish an FMLA retaliation claim by 'showing that the protected conduct was a substantial or motivating factor in the employer's decision.'" Goelzer v. Sheboygan County, 604 F.3d 987, 995 (7th Cir. 2010) (emphasis in original) (quoting Lewis v. Sch. Dist. # 70, 523 F.3d 730, 741 (7th Cir.2008).) Because Plaintiff can establish a timely and viable FMLA retaliation claim, summary judgment should be denied.

### 1. *Plaintiff's FMLA Retaliation Claim is Timely.*

Defendant's contention that part of Plaintiff's retaliation claim is barred by the statute of limitations is without merit. Under the FMLA, an ordinary action may be brought "not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought." 29 U.S.C. § 2617(c)(1). A willful violation, however, may be brought "within 3 years of the date of the last event constituting the alleged violation for which the action is brought." 29 U.S.C. § 2617(c)(2). In the Fair Labors Standard Act context, a willful violation exists "where the employer 'knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute.' " Fialho v. Girl Scouts of Milwaukee Area, Inc., No. 06-c-1218, 2007 WL 1246433, at *2 (E.D. Wis. Apr. 30, 2007) (quoting McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988).) Courts apply this same standard to FMLA claims. Fialho, 2007 WL 1246433, at *2.

Upon Plaintiff's return from FMLA leave, Defendant took multiple retaliatory actions against her including: (1) assignment to third-shift; (2) providing her with a negative mid-year review; (3) placing her on a PIP within a month of her return from FMLA leave; and (4) ultimately firing her on March 1, 2011. Defendant contends that the first three actions are

6

untimely under the two year statute of limitations. (Def.'s Mem. Summ. J. at 10.) This argument is nothing more than a distraction; however, since Plaintiff's termination occurred within two years of her bringing this claim, and that is the last event causing Plaintiff actionable wage loss damages under the law. See generally 29 U.S.C. § 2617. Thus, while Plaintiff can use these earlier events to show a campaign of retaliation[4], it is her termination which is relevant at the end of the day. In any case, given the significant evidence of blatant interference and retaliation for taking protected leave, there is at least an issue of fact as to whether the three year statute of limitations should be applied. See, e.g., Thornton v. AT&T Mobility Services, Inc., No. 10-3073, 2010 WL 3834518, at *3 (C.D. Ill. Sept. 14, 2010) (plaintiff's allegations that she was denied FMLA leave as part of ongoing harassment was enough to create an issue of fact as to whether the denial was willful).

## 2. *Plaintiff Can Establish a Prima Face Case of Retaliation.*

To prove a *prima facie* case of retaliation under the FMLA, a plaintiff may proceed under a direct or indirect method of proof. Goelzer, 604 F.3d at 995 (internal citation omitted). In this case, Plaintiff can prevail under either method.

### A. Direct Evidence Demonstrates that Plaintiff was Terminated Because She took FMLA Leave.

Under the direct method, Plaintiff "must present evidence of (1) a statutorily protected activity;[5] (2) a materially adverse action taken by the employer; and (3) a causal connection between the two." Caskey v. Colgate–Palmolive Co., 535 F.3d 585, 593 (7th Cir. 2008) (internal

---

[4] See, e.g., Arrigo, 2013 WL 5498139 at *11 (explaining that even though smaller incidents of interference would be insufficient to sustain an interference claim, there was "no reason to exclude these smaller incidents of alleged interference from the alleged campaign of harassment...")

[5] Plaintiff engaged in protected conduct when she took medical leave in July 2010 for her serious health condition. Defendant does not dispute this element. (See Def.'s Mem. Summ. J. at 12–13.)

7

citation omitted). If Plaintiff's evidence is subsequently contradicted by Defendant, "the case must be tried unless the defendant presents *unrebutted* evidence that he would have taken the adverse action against the plaintiff even if he had no retaliatory motive . . ." Ley v. Wisconsin Bell, 819 F. Supp. 2d 864, 869 (E.D. Wis. 2011) (citation omitted) (emphasis added). Because Defendant cannot present *unrebutted* evidence that it would have taken these adverse actions against Plaintiff even if it had no retaliatory motive, summary judgment should be denied.

### i. *Plaintiff Suffered Multiple Materially Adverse Actions on Account of Her Protected Leave.*

Likewise, Plaintiff can also demonstrate that she suffered multiple materially adverse actions during and upon return from her protected leave including: (1) assignment to the third-shift; (2) providing her with a negative mid-year review; (3) placing her on a PIP within a month of her return from FMLA leave; and (4) ultimately firing her on March 1, 2011.[6] Materially adverse actions include "any actions that would dissuade a reasonable employee from exercising his rights under the FMLA. Breneisen, 512 F.3d at 979 (citing Burlington Northern & Santa Fe Ry. v. White, 548 U.S. 53, 57 (2006).) These actions are all materially adverse actions that would dissuade a reasonable employee from exercising her FMLA rights.

Plaintiff's assignment to third shift was materially adverse. "Both interference and retaliation may be shown when an employer does not return an employee to an equivalent position upon return from FMLA leave." Williams v. U.S. Steel Corp., No. 2:10cv425, 2012 WL 3233736, at *6 (N.D. Ind. Aug. 6, 2012). The FMLA requires that upon return from leave, the employee must be "restored to the position of employment held by the employee when the leave commenced" or to "an equivalent position with equivalent employment benefits, pay and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1). The Department of Labor

---

[6] Both parties agree that Plaintiff's termination constitutes a materially adverse action. (See Def.'s Mem. Summ. J. at 15.)

8

("DOL") regulations provides in part that an "employee is ordinarily entitled to return to the *same shift or an equivalent work schedule.*" 29 C.F.R. § 825.215(e)(2) (emphasis added).

Plaintiff's transfer to third shift while on FMLA leave was not merely a simple rotation as Defendant seems to suggest. Not only was it a switch from day shift to night shift, but it was more physical than the first shift – an obvious hardship for Plaintiff. A jury may infer discrimination from an employer's change of an employee's work schedule where the employer exploits a known vulnerability of an employee. See, e.g., Washington v. Ill. Dep't of Revenue, 420 F.3d 658, 662–63 (7th Cir. 2005) (holding that employer's removal of employee's flex-time could potentially constitute a material change to working conditions under the Title VII anti-retaliation provision where plaintiff needed to be home to care for son who had Down Syndrome). The Seventh Circuit has further acknowledged that "an act that would be immaterial in some situations is material in others." Blue v. Int'l Bhd. of Elec. Workers-Local 159, 726 F.Supp.2d 1009, 1016 (W.D. Wis. 2010) (quoting Washington, 420 F.3d at 661). The transfer to third shift alone renders summary judgment inappropriate. Indeed, "the test for equivalence is 'strict'. . . and generally presents a fact question for the jury." Haskel v. CentraCare Health System, ---F. Supp. 2d ----, 2013 WL 3338686, at *5–6 (D. Minn. July 2, 2013) (quoting Breneisen, 512 F.3d at 977) (citation omitted).

A week or two after returning from leave, Plaintiff received an overall performance rating of "Development Needed" in her mid-year evaluation review by management – the lowest rating she had *ever* received as an Assistant Manager. (Pl.'s PFOF ¶ 50.) Within weeks of this negative performance rating, she was placed on a disciplinary PIP. Defendant's position that Plaintiff's negative review and PIP are not materially adverse actions sufficient to support a retaliation claim is misguided. Indeed, a cognizable claim of retaliation may be based on acts

9

that, "although seemingly appropriate and nondiscriminatory in isolation, bespeak retaliation when considered together." Blue, 726 F.Supp.2d at 1016) (citing McKenzie v. Ill. Dep't of Transp., 92 F.3d 473, 483 n.7 (7th Cir. 1996)).

Defendant's citation to Cole v. Illinois, 562 F.3d 812 (7th Cir. 2009), is inapposite to this case.[7] In Cole, about a month after returning from FMLA leave, the plaintiff was told that she would lose her job if she did not agree to participate in a performance improvement plan. Id. at 813. The plaintiff was told twice that she would be fired if she did not sign the plan, but she refused to sign. Id. at 814. Plaintiff sued alleging retaliation for taking FMLA leave, but the court granted summary judgment in the employer's favor. Id. at 814–15. The Seventh Circuit ultimately affirmed the district court, explaining that the plaintiff did not introduce "*any* evidence to suggest that her termination stemmed from any cause other than her refusal to sign the [PIP]." Id. at 816. (emphasis added). Unlike Cole, Plaintiff has set forth a mosaic of evidence *in addition to the PIP*, demonstrating that Defendant acted with discriminatory intent following her return from FMLA leave. The transfer to third shift, the worst performance review in her employment history and the PIP must be considered together. Because a reasonable jury could infer that the change in shift, the negative mid-year evaluation, the October 2010 Performance Improvement Plan and termination were all retaliatory in nature, summary judgment should be denied.

---

[7] Givens v. Cingular Wireless, 396 F.3d 998, 998 (8th Cir. 2005), Taylor v. Small, 350 F.3d 1286, 1293 (D.C. Cir. 2003), Agnew v. BASP Corp., 286 F.3d 307, 310 (6th Cir. 2002) and Sweeney v. West, 149 F.3d 550, 555–56 (7th Cir. 1998) are inapposite, because they stand for the proposition that a negative performance evaluation or PIP, *standing alone*, cannot constitute an adverse action. Here, Plaintiff has set forth an abundance of adverse actions in addition to the PIP that most certainly "bespeak retaliation when considered together." Blue, 726 F. Supp. 2d at 1016.

10

## ii. *Plaintiff can Demonstrate a Causal Connection between her Protected Leave and the Materially Adverse Actions.*

The causal connection "may be met through either a direct admission ... or through 'a convincing mosaic of circumstantial evidence' permitting the same inference." Pagel v. TIN, Inc., 695 F.3d 622, 631 (7th Cir. 2012) (quoting Ridings v. Riverside Med. Ctr., 537 F.3d 755, 771 (7th Cir. 2008) The "convincing mosaic of circumstantial evidence may include suspicious timing, ambiguous statements from which retaliatory intent can be drawn, evidence of similar employees being treated differently, or evidence that the employer offered a pretextual reason for the termination." Pagel, 695 F.3d at 631 (citation omitted). The employee need only demonstrate that the protected conduct was a substantial or motivating factor in the employer's decision. Goelzer, 604 F.3d at 995 (7th Cir. 2010) (internal citations and quotation marks omitted).

At the time of Plaintiff's termination, she had an extensive employment history with Defendant, working her way up from a stocker in 1998 to an Assistant Manager ten years later in 2008. During her decade of employment, Plaintiff consistently received positive evaluations. Her supervisors noted that she was a "[g]reat team player. Has a great work ethic; implements a lot great ideas in her areas. Has a positive attitude to learn more." (Pl's. PFOF ¶ 22.) Plaintiff consistently received an overall performance score of "Solid Performer" on her annual evaluations. (Pl's. PFOF ¶ 50.) In April of 2010, Plaintiff was diagnosed with a cyst on her kidney and fibroid tumors on her uterus, requiring three separate surgeries. Soon after receiving the diagnosis, Plaintiff requested and received FMLA leave.

Everything changed for the worst following her surgeries. While out on leave, Plaintiff was rotated to the more physically demanding third shift, despite the fact that there were other Assistant Managers who had not yet rotated to that shift. Then, a week or two after her returning

11

from leave, Plaintiff was given an overall performance score of "Development Needed" on her mid-term review by store management – notably, the *lowest* overall score she had ever received. A week or two after that, Plaintiff was placed on a disciplinary PIP. A few months later, she was fired.

To conceal the discrimination, Defendant claims that Plaintiff was terminated because she allegedly proved to be "ill-suited" for her position. Defendant highlights in its brief that Plaintiff's performance issues allegedly "remained consistent over a nearly two-year period." (Def.'s Mem. Summ. J. at 2.) Yet, over that two year period, Plaintiff never received an overall performance rating of "Development Needed" as she did when she return from protected leave, nor did Defendant ever follow through on a PIP for Plaintiff until *after* she returned from leave. Defendant's reasons for reprimanding Plaintiff for her alleged performance deficiencies are pretextual. In actuality, management was annoyed that Plaintiff went on leave and then had the audacity to seek additional intermittent leave. In retaliation and in an effort to prevent Plaintiff from taking additional leave, Defendant trumped up allegations of poor performance and fired her. Because Defendant's reasons for terminating Plaintiff rely on genuinely disputed facts they must be resolved by a jury. See, e.g., Arrigo, ---F.Supp.2d----, 2013 WL 5498139, at *13 (concluding that some of the examples of plaintiff's poor performance relied on "genuinely disputed facts" and in turn, were for a jury to resolve.)

### B. Circumstantial Evidence Also Demonstrates that Plaintiff was Terminated Because she took FMLA leave.

Under the indirect method, Plaintiff must demonstrate that (1) she engaged in statutorily protected activity; (2) she met the employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. Ley v. Wisconsin Bell, 819 F. Supp. 2d 864,

12

869–870 (E.D. Wis. 2011) (internal citations omitted).  Defendant challenges elements two and four.

### i.    *Plaintiff was Meeting Defendant's Legitimate Expectations*

In determining whether an employee is meeting her employer's legitimate expectations, "the issue is not the employee's past performance but whether the employee was performing well at the time of [her] termination." Peele v. Country Mut. Ins. Co., 288 F.3d 319, 329 (7th Cir.2002) (internal citation and quotation marks omitted).  Defendant maintains that Plaintiff's ongoing performance issues allegedly "intensified" after she returned from leave. (Def's. Mem. Summ. J. at 16.)    However, Plaintiff never received an overall performance rating of "Development Needed" nor did Defendant ever follow through on a PIP for Plaintiff until *after* she returned from leave.  What's more, during her PIP, Plaintiff's co-managers expressed to her that things were going well.  (Pl's. PFOF ¶ 60.) Undoubtedly, Plaintiff's performance issues as identified by Defendant are genuinely disputed facts that must be resolved by a jury, not at summary judgment.

### ii.    *Plaintiff was treated less favorably than similarly situated employees who did not engage in statutorily protected activity.*

Plaintiff can also demonstrate that similarly situated employees were treated more favorably than her.  In determining whether two employees are  "similarly situated" courts analyze whether they "(i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications, provided the employer considered these latter factors in making the personnel decision." Ajayi v. Aramark Bus. Servs., Inc., 336 F.3d 520, 532 (7th Cir. 2003) (internal citation omitted).  Notably, however, "[t]he similarly situated co-worker inquiry is a search for a substantially similar employee, **not for a clone**." Chaney v. Plainfield Healthcare

13

Ctr., 612 F.3d 908, 916 (7th Cir. 2010) (internal citation omitted) (emphasis added).

While on FMLA leave, Plaintiff discovered that she was rotated on third shift again. Not only had she been on third shift already, but she was not in a position where she could exert the additional physical energy required for this shift. Plaintiff set forth evidence of other Assistant Managers at the West Bend store that had not yet been on third shift, including C.J, Nancy and Josh. Nothing in this record suggests that any of these managers had taken FMLA leave. (Pl's. PFOF ¶ 45.)

As for the October 2010 PIP, Plaintiff set forth evidence that Joseph Frankiewicz, another West Bend Assistant Manager who had not recently taken FMLA leave, was treated more favorably than her. Specifically, Frankiewicz was guilty of what Massopust described as "theft", but was only given a coaching. (Pl's. PFOF ¶¶ 67-68.) A reasonable jury could infer that Plaintiff was treated differently than other similarly situated Assistant Managers because she took FMLA leave. Summary judgment on Plaintiff's FMLA Retaliation claim should be denied.

## B. Genuine Issues of Material Fact Preclude Summary Judgment on Plaintiff's FMLA Interference Claim.

Employers may not "interfere with, restrain, or deny the exercise of or the attempt to exercise" any rights provided by the FMLA. 29 U.S.C. § 2615(a)(1). "'Interfering with' the exercise of an employee's rights would include ... discouraging an employee from using [FMLA] leave.'" Williams v. Illinois Dept. of Corrections, No. 05-cv-4227-JPG, 2007 WL 772933, at *5 (S.D. Ill. March 9, 2007) (citing 29 C.F.R. § 825.220(b).) An employer may also interfere by forcing an employee to take FMLA leave that she did not request or need. See, e.g., Buffone v. Rosebud Restaurants, Inc., Civ. A. 05 C 5551, 2006 WL 1843366, at *5 (N.D. Ill. June 28, 2006) (explaining that if employer forced plaintiff to take FMLA leave and did not properly advise her of her FMLA rights, plaintiff has a cause of action). Here, Defendant

14

unlawfully interfered with Plaintiff's ability to exercise her rights under the FMLA when they (1) required Plaintiff to take more leave than necessary after her surgeries and (2) discouraged her from attempting to use additional intermittent FMLA leave after she returned to work. (ECF No. 15 at ¶ 62.) Because Plaintiff can establish a timely and viable FMLA interference claim, summary judgment should be denied.

### 1. Plaintiff's FMLA Interference Claim is Timely.

As described in Part II(A)(1) <u>infra</u>, the FMLA provides a statute of limitations of two years in ordinary circumstances and three years for willful violations. <u>See</u> 29 U.S.C. 2617(c)(1)–(2). After Plaintiff's surgeries, Plaintiff called Massopust and explained that while she was experiencing some post-operative complications, she was able to work (and had been) a few hours a week. During this same conversation, Plaintiff inquired into whether she could return to work on a part-time basis. Massopust told Plaintiff that she could not return to work until she was 100% and, in turn, forced Plaintiff to remain on continuous leave until September 13, 2010. While Massopust denied there was such a policy, several other Wal-Mart employees testified that an employee had to be 100% before returning to work, corroborating Plaintiff's testimony.

Not only did Defendant force Plaintiff to remain on continuous leave when it was not needed, but Defendant later discouraged her from using additional intermittent FMLA leave after she returned from work by rotating Plaintiff to third shift. Additionally, about one to two weeks after her return, she was given a negative mid-year evaluation.

Finally, Defendant's position that any alleged interference after Plaintiff returned to work had to have occurred before October 8, 2010 ignores the record. Plaintiff gave multiple examples of Defendant's attempts to discourage her from using additional intermittent leave *after* October 8, 2010 including placement on a PIP on October 15, 2010 and her termination on

15

March 1, 2011, both of which are well within the two year statute of limitations.

Plaintiff has presented evidence of interference within both the two and three year statute of limitations. Further, because genuine issues of material fact exist as to whether Defendant willfully violated the FMLA, triggering a three year-FMLA limitations period, summary judgment should be denied. See, e.g., Maher v. Inter'l Paper Co., 600 F. Supp. 2d 940, 955 (W.D. Mich. 2009) (holding that genuine issue of material fact existed as to whether employer's alleged FMLA violation was willful).

### 2. *Plaintiff Can Establish a Prima Facie Case of Interference.*

To prevail on a FMLA interference claim, an employee must establish that (1) she was eligible for FMLA protection, (2) her employer was covered by the FMLA, (3) she was entitled to leave under the FMLA, (4) she provided sufficient notice of her intent to take leave, and (5) her employer denied her FMLA benefits to which she was entitled. Burnett, 472 F.3d at 477. Defendant does not appear to dispute the first three elements. (See Def.'s Br. in Supp. of Summ. J. at 6.) Here, Plaintiff has presented sufficient evidence to survive summary judgment.

Indeed, the FMLA's notice requirements are "not onerous." Burnett, 472 F.3d at 478. In fact, when giving notice, '[a]n employee need not expressly mention the FMLA in his leave request or otherwise invoke any of its provisions.'" Id. at 478. (internal citation omitted). Once notice is given, "the FMLA imposes a duty on the employer to conduct further investigation and inquiry to determine whether the proposed leave in fact qualifies as FMLA leave." Id. (citation omitted).

Again, Plaintiff asked Massopust if she could come back to work part-time until she received approval from her doctor to lift and her wounds were completely healed. Instead, she

was told by Ms. Massopust that she had to be 100% to return to work.[8] The record demonstrates that while Plaintiff was interested in taking additional time off, she was not sure what her options were. (See Pl's. PFOF ¶¶ 39-41.) Just because Plaintiff requested and took *continuous* FMLA leave, does not imply (as Defendant suggests) that she knew whether she was eligible *intermittent* FMLA leave.

Defendant cites Collins v. NTN-Bower Corp., 272 F.3d 1006 (7th Cir. 2001) in support of its proposition that Plaintiff's complaints were "vague," but Collins is distinguishable. In Collins, the plaintiff was fired when she called in "sick" for two days. The plaintiff contended she had a covered condition under the FMLA, but never disclosed this condition to her employer at the time. Id. at 1007. Unlike the plaintiff in Collins, Plaintiff did not merely call in "sick" with no further information. Rather, Defendant had been made aware of Plaintiff's diagnosis as early as April 2010, and received medical certification outlining the three surgeries Plaintiff was having prior to her requested intermittent leave. Unlike Collins, Plaintiff kept Defendant well informed of her condition. A reasonable jury could infer that Plaintiff's statements were sufficient notice when viewed in the proper context. See, e.g., Burnett v. LFW, Inc., 472 F.3d 471, 480 (7th Cir. 2006) (finding proper notice was given by employee considering the "surrounding circumstances," namely that plaintiff "gave an account of symptoms and complaints" over a four month period).

Plaintiff was undoubtedly prejudiced by Defendant's unlawful denial of additional FMLA leave. A reasonable jury could certainly infer that Defendant's interference and ultimate denial of additional FMLA leave played a part in Plaintiff's termination.

---

[8] In the ADA context, a "100% healed" policy is a *per se* violation when applied to disabled individuals. See Steffen v. Donahoe, 680 F.3d 738, 748 (7th Cir. 2012).

## III. GENUINE ISSUES OF MATERIAL FACT PRECLUDE SUMMARY JUDGMENT ON PLAINTIFF'S TITLE VII CLAIMS. [9]

Title VII makes it unlawful for an employer to discriminate against any individual on the basis of sex with respect to the compensation, terms, conditions or privileges of employment. 42 U.S.C. §2000e-2(a)(1). The actionable Title VII violations in this case include disparate pay, failure to promote and discriminatory termination. (ECF No. 15 ¶¶69-73.) "[A] plaintiff can avert summary judgment on Title VII claims either by putting in enough evidence, whether direct or circumstantial, of discriminatory motive to create a triable issue or by establishing a *prima facie* case under the McDonnell Douglas formula." Lewis v. City of Chicago, 496 F. 3d 645, 650 (7th Cir. 2007) (internal citations and quotations omitted). These two methods of proof are referred to as the direct and indirect methods of proving discrimination. See Gonzalez v. Ingersoll Milling Mach. Co., 133 F. 3d 1025, 1036 (7th Cir. 1998). If a plaintiff can satisfy either method, summary judgment should not be granted. Lewis, 496 F. 3d at 650. Regardless of which method a plaintiff uses to prove discrimination, the plaintiff must demonstrate that she suffered a materially adverse employment action.[10] Id. at 652. Because Plaintiff can demonstrate that she was discriminated against under both methods and further, that she suffered materially adverse employment actions as result, Defendant's motion should be denied.

---

[9] Plaintiff has chosen not to pursue her claims under the Equal Pay Act. Instead, Plaintiff will pursue her pay and promotion discrimination claims and seek relief under the more relaxed Title VII standards.

[10] An adverse employment action is defined broadly, but does not include everything that could make an employee unhappy. Lewis, 496 F. 3d at 653. "For an employment action to be actionable, it must be a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significant different responsibility, or a decision causing a significant change in benefits." Id. (quoting Bell v. E.P.A., 232 F. 3d 546, 555 (7th Cir. 2000) (citations omitted).

Case 2:12-cv-01019-NJ   Filed 11/06/13   Page 18 of 31   Document 43

## A. Direct Evidence Demonstrates Plaintiff was Discriminated against in her Pay, Promotion and Termination.

Under the direct method of proving discrimination, a plaintiff may avoid summary judgment by producing either direct or circumstantial evidence that would merely permit a jury to infer that discrimination motivated the adverse employment action. Diaz v. Kraft, 653 F. 3d 582, 587 (7th Cir. 2011) (internal citation omitted). Because direct evidence essentially equates to "an admission by the decision-make that his actions were based on prohibited animus," such evidence is rarely found. Lewis, 496 F. 3d at 650–51 (citations omitted). A plaintiff who cannot establish an admission of discriminatory animus may also satisfy the direct model by use of circumstantial evidence. Id. at 652. Courts in the Seventh Circuit typically divide circumstantial evidence into three categories:

> suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment; and (3) evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class and the employer's reason is a pretext.

Atanus v. Perry, 520 F. 3d 662, 672 (7th Cir. 2008). Plaintiffs proceeding under the direct method are not required to rebut a defendant's non-discriminatory reason for the adverse employment action. Diaz, 653 F. 3d at 588. As long as the plaintiff's evidence creates a triable issue on whether discrimination motivated the employer's actions, the plaintiff is entitled to go to trial. Id. at 587.

### i. Plaintiff's Rate of Promotion as Compared to Similarly qualified Male Employees Establishes an Inference of Discrimination under the Direct Method.

Plaintiff worked for Wal-Mart for ten years before being promoted to Assistant Manager. (See Pl.'s PFOF ¶¶ 1,5.) By comparison, the six former football players (Tabasky, Hamel, St.

John, Henry, Gant and Shumpert) were recent college graduates when they became Assistant Managers. (Pl.'s PFOF ¶ 72.) Zastrow and Frankiewicz, two male employees hired around the same time as Plaintiff, were promoted to Assistant Manager after one and a half years and two years of employment respectively. (Pl.'s PFOF ¶¶ 94, 97.) Like Plaintiff, Zastrow had no college degree at the time of his promotion. (Pl.'s PFOF ¶¶ 93.) Of the eight male comparators, the longest period of employment prior to being promoted to Assistant Manager was two years. Plaintiff worked for ten. Even more striking, the *combined* three and one half years of service for the *eight* male comparators prior to their promotions to Assistant Manager is less than half of the Plaintiff's ten years of service prior to hers.

Not only were these male employees immediately placed on the management track, but several of them were promoted again within a few years of their initial hire date. For example, Tabasky was promoted to Shift Manager after only one and a half years of employment with Wal-Mart. (Pl.'s PFOF ¶ 78.) In essence, it took Tabasky all of two years to surpass Plaintiff in rank. The same can be said for Hamel, who was promoted to Shift Manager after only two years of employment, as well as Zastrow, who was promoted to Shift Manager after approximately six years of employment. (Pl.'s PFOF ¶¶ 83, 94.) Plaintiff, on the other hand, was never promoted past Assistant Manager in her thirteen plus years of employment with Wal-Mart.

The Defendant attempts to legitimize its failure to promote Plaintiff by claiming that she was not qualified for such promotions and had performance issues. Such arguments are immaterial under the direct method, as Plaintiff is not required to rebut Defendant's alleged nondiscriminatory rationale. Diaz v. Kraft, 653 F. 3d 583, 588 (7th Cir. 2011). Instead, raising an inference of discrimination is sufficient; the following graph demonstrates the drastic difference in treatment:

| Employee | Education | Hire | Approx. Years Until Promotion To: | | | Eval |
|---|---|---|---|---|---|---|
| | | | Asst Mgr. | Shift Mgr.[11] | Store Mgr. | |
| Langenbach | H.S. Deg. | 1998 | 10 | | | Solid |
| Frankiewicz | H.S. Deg. | 1998 | 1[12] | | | Solid |
| Zastrow | H.S. Deg. | 2001 | 1.5 | 6-7 | 1 | |
| Tabasky | Coll. Deg. | 2010 | 0 | 1.5 | | Solid |
| St. John | Coll. Deg. | 2010 | 0 | | | Solid |
| Hamel | Coll. Deg. | 2010 | 0 | 2 | | Solid |
| Henry | Coll. Deg. | 2010 | 0 | 3 | | Solid |
| Gant | Coll. Deg. | 2010 | 0 | | | |
| Shumpert | Coll. Deg. | 2011 | 0 | | | |

Despite their inferior experience, each of the male comparators received promotions at a drastically faster rate than Plaintiff.

Though not required, rebutting the Defendant's rationale for why the male employees were promoted at such faster pace lends further support to Plaintiff's claims. Defendant's argument that the male comparators received these promotions because of their educational background conflicts with Defendant's admission that once accepted into the MIT program, an employee's advancement depends on their performance, not their educational background. (Pl.'s PFOF ¶ 75.) Even without such a college degree, Zastrow was promoted within two years, and then later promoted again to Shift Manager and Store Manager. (Pl.'s PFOF ¶¶ 93-95)

The Defendant's performance claims similarly fail. Prior to becoming an Assistant Manager, Plaintiff consistently received positive reviews. (Pl.'s PFOF ¶ 22, 50.) Despite her exemplary performance, Plaintiff waited ten years to become an Assistant Manager, while the male comparators were promoted in a fraction of that time. Plaintiff's exemplary performance

---

[11] For promotions past Assistant Manager, the approximate years figure reflects the years between each promotion, not time since hire date.
[12] Frankiewicz was promoted to Assistant Manager twice, once in 1999, and once in 2001. After his promotion in 1999, he self-demoted, but was still promoted again in 2001.

continued as an Assistant Manager, exemplified by the "Solid Performer" rating she received on her first two annual reviews. (Pl.'s PFOF ¶ 50.) Yet she was never promoted past Assistant Manager and the comparators were, even though they received the very same "Solid Performer."

During her employment, Plaintiff also noticed that other female employees were similarly denied promotional opportunities. (Pl.'s PFOF ¶ 12.) In particular, Plaintiff observed that Courtney Wilcox, one of her eventual shift managers, was denied promotions on several occasions. (Id. at ¶ 13.) Wilcox confirmed Plaintiff's intuitions when she herself made a discrimination claim against Mike Dooley, the West Bend Store Manager, during the pendency of this case. (Id. at ¶ 14.) Wilcox alleged that Dooley treated her differently than her male counterparts, often circumventing her authority and speaking to her male subordinates instead of addressing store issues with her. (Id. at ¶ 15.)

The systematic failure to promote female employees is further exemplified by the manner in which the former football players were hired. Each of the players was hired outside of the Career Preferences system. Instead of applying online, some of players forwarded their resume to Chris Meidt, the acting Regional Manager, who then forwarded the resumes to the Regional HR Director, Joanne Massopust. (Id. at ¶ 74.) Defendant contends that this special hiring procedure was an approved company policy, but lacks one shred of credible evidence in its support. (Id. at ¶7.) Not a single defense witness could explain when, how, or by whom this "policy" was adopted – it seemed to appear out of thin air.

To counter these arguments, Defendant points to other female employees who were promoted, including Courtney Wilcox. However, an employer cannot defeat a Title VII claim by treating a single member of a protected class in accordance with the law. Diaz, 653 F. 3d 582. In Diaz, the defendant argued that the Hispanic plaintiffs could not support an inference of

22

discrimination for failure to promote because at least one other Hispanic was not discriminated against in the same way. Id. at 587. The court found such an argument unpersuasive. Id. In rejecting the argument, the court stated "that the principle focus of [Title VII] is the protection of the individual employee, rather than the protection of the group as a whole. Id. (internal citations omitted.) "Discrimination against one Hispanic employee violates the statute, no matter how well another Hispanic employee is treated. Id. at 588.

Viewing all of this evidence in the light most favorable to Plaintiff, a clear inference of discrimination exists. Plaintiff was promoted at a drastically slower rate than her male counterparts, despite similar or superior qualifications. The Defendant's supposed explanations for its failure to promote Plaintiff instead support the fact that male employees were systematically treated more favorably than females. Male employees made up the overwhelming majority of West Bend's management structure, other female employees have similarly been bypassed for promotions, and male employees often received special treatment during the hiring and promotion process. Indeed, a triable issue exists as to whether Defendant's failure to promote Plaintiff resulted from a discriminatory motive. Accordingly, the Defendant's motion should be denied.

### iii. *The Disparate Pay that Resulted when Plaintiff's Male Comparators were Promoted Raises an Inference of Discrimination under the Direct Method.*

In demonstrating a triable issue, the plaintiff need not satisfy the elements of an indirect claim, namely that she was meeting legitimate expectations or treated less favorably than similarly situated males. See Diaz, 563 F. 3d at 588-89. Similarly, the plaintiff is not required to rebut the defendant's proposed non-discriminatory rationale. Id. Instead, it is sufficient that the evidence raises an inference upon which a reasonable jury could find that the disparate pay resulted from a discriminatory motive. Id.

23

Wal-Mart systemically promoted males at a greater rate than their female counterparts. Plaintiff was no exception. When the male employees were promoted past Plaintiff, they received higher pay because, according to Wal-Mart's pay structure, employees can only receive a pay raise above their current pay band if they are promoted.[13] Stuck without a promotion, Plaintiff and her female counterparts could receive incremental raises, but could not surpass their pay cap. To illustrate:

| EMPLOYEE | HIGHEST KNOWN BASE PAY IN POSITIONS:[14] | | |
|---|---|---|---|
| | ASST MGR. | SHIFT MGR. | STORE MGR. |
| Frankiewicz | $55,000 | | |
| St. John | $45,702 | | |
| Hamel | $45,702 | $65,000 | |
| Shumpert | $44,451 | | |
| **Langenbach** | **$40,903** | | |
| Henry | $38,951 | $59,995 | |
| Tabasky | $38,951 | $65,000 | |

Due to Wal-Mart's failure to promote Plaintiff to Shift Manager, she earned nearly $25,000 less than Tabasky in base pay, a difference certain to rise if considered with bonus and incentive pay. The mountain of evidence concerning Wal-Mart's systematic failure to promote female employees, coupled with the fact that the promotions resulted in higher pay for male employees, certainly raises an inference that Wal-Mart intended to pay female employees less than their male counterparts. Defendant's motion for summary judgment should be denied.

iv. ***Defendant's Reasons for Plaintiff's Termination Raise an Inference of Discrimination under the Direct Model.***

---

[13] In 2010, Assistant Managers earned $1,461 bi-weekly ($38,000 annually) at non-metro stores and $1,673 bi-weekly ($43,500 annually) at metro stores. In 2011, Shift Managers earned $2,307.50 bi-weekly at non-metro stores and $2,500 bi-weekly ($65,000) at metro stores.

[14] Base Pay figures do not include bonus or incentive pay.

24

Defendant contends that Plaintiff was fired for poor performance and failure to comply with company policies. The evidence proves otherwise. Plaintiff was not only performing up to Wal-Mart's expectations, but she had never received a negative review prior to going on leave. Her two annual reviews as an Assistant Manager rated her a "Solid Performer," a fact supported by her immediate supervisors. (Pl.'s PFOF at ¶ 50.) Defendant's assertion that Plaintiff violated company policy due to her alleged phone use is similarly flawed because Defendant had no phone policy for Assistant Managers. Instead, Plaintiff and defense witnesses alike indicated that managers regularly used their cell phones while at work and no one had ever heard of an employee being disciplined for such actions prior to Plaintiff's termination. (Pl.'s PFOF at ¶¶ 70-71.)

Further raising an inference of discrimination, male employees who committed much more serious acts of indiscretion received lesser discipline. For example, Frankiewicz was accused of theft of a store cell phone when he was an Assistant Manager. He was not terminated. He was not even put on a PIP. Instead, he was given a verbal coaching.[15] (Pl.'s PFOF ¶¶ 67-68.) The diverging treatment of Plaintiff and her male counterparts raises an inference of discrimination – an inference again supported by Wilcox's complaint during this case. As a result, the Defendant's motion should be denied.

B.     **The Indirect Method Demonstrates Plaintiff was Discriminated against in her Pay, Promotion and Termination.**

Under the indirect model, a plaintiff may avoid summary judgment by establishing a *prima facie* case of discrimination according to the <u>McDonnell Douglas</u> formula. <u>Lewis</u>, 496 F. 3d at 650. The burden of establishing a *prima facie* case of discrimination is not onerous.

---

[15] He received the coaching despite defense witnesses admitting that "theft" is such a serious indiscretion that it would prevent the accused employee from ever being rehired by the company. (<u>See</u> Pl.'s PFOF ¶ 66.)

Case 2:12-cv-01019-NJ   Filed 11/06/13   Page 25 of 31   Document 43

Coleman v. Donahoe, 667 F. 3d 835, 846 (7th Cir. 2012) (internal citation and quotation marks omitted). To do so, the plaintiff must only show that: (1) she was a member of a protected class; (2) she was meeting her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) the employer treated a similarly situated man more favorably. Cullen v. Indiana University Board of Trustees, 338 F. 3d 693, 703-04 (7th Cir. 2003). Once the plaintiff establishes a *prima facie* case, it is incumbent upon the defense to provide a nondiscriminatory reason for the decision. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (19730; Farrell v. Butler Univ., 421 F. 3d 609, 613 (7th Cir. 2005). If the defendant is able to do so, the burden then shifts back to the plaintiff to demonstrate that the defendant's explanation was purely pretext. Farrell, 421 F. 3d at 613. Here, summary judgment is not appropriate because Plaintiff can establish a *prima facie* case of discrimination for all three discrimination claims.[16] Furthermore, the nondiscriminatory reasons offered by the Defendant are faulty and support an inference that the Defendant's motive was discriminatory. Therefore, the Defendant's motion should be denied.

### i. Defendant's Failure to Promote Plaintiff Creates a Presumption of Discrimination under the Indirect Method.

When a plaintiff uses the indirect method to establish a failure to promote claim, the elements of a *prima facie* case are slightly altered. See Jordan v. City of Gary, 396 F. 3d 825, 832 (7th Cir. 2005). In addition to the protected class element, the plaintiff must show that (1) she was qualified for the position; (2) she was rejected for the position sought; and (3) the position was granted to a person outside the protected class who is similarly or less qualified than the plaintiff. Id. If the plaintiff is able to establish a *prima facie* case, a presumption of discrimination exists which must be rebutted by the Defendant.

---

[16] It is undisputed that Plaintiff is a member of a protected class under Title VII.

Here, Plaintiff can satisfy the element of a *prima facie* case because Plaintiff applied for promotions to the Assistant Manager and Shift Manager positions yet was repeatedly denied, and male comparators with inferior qualifications were hired instead. To be promoted to an Assistant Manager position, a Wal-Mart employee must meet one of these three minimum requirements: (1) One year retail experience and one year supervisor experience; or (2) Two years general work experience and one year supervisor experience; or (3) Completion of two or more years of college. (Pl.'s PFOF ¶ 100.) At minimum, Plaintiff met these requirements in 2002, one year after her promotion to Jewelry Department Manager. However, Plaintiff was not promoted until six years later.

On the other hand, the male comparators were promoted to Assistant Manager almost immediately upon meeting the minimum requirements. The football players became Assistant Managers upon graduating. Frankiewicz was promoted within two years of his start with Wal-Mart. Zastrow was promoted after one and one half years as a sales associate.[17] Considering that male comparators were hired with less experience than Plaintiff, it is reasonable to conclude that Plaintiff met the minimum requirements for the position – that is, except that she was female.

It is also reasonable to conclude that Plaintiff was qualified for the Shift Manager position. She received the very same "Solid Performer" rating that Hamel and Tabasky received prior to their promotion, so her performance was comparable. According to her manager, Plaintiff displayed a great work ethic and was a great team player. She also had substantially more retail and managerial experience than the male comparators, yet they were promoted and she was not. If the football players were qualified for promotions with the same rating and less

---

[17] Interestingly, it is unclear whether Zastrow met these minimum requirements at the time of his promotion to Assistant Manager.

Case 2:12-cv-01019-NJ   Filed 11/06/13   Page 27 of 31   Document 43

experience, why wasn't Plaintiff?  Put simply, she was female.  Accordingly, Plaintiff has established a *prima facie* case and summary judgment is inappropriate.

### ii.    *Defendant's Failure to Promote Female Employees resulted in Disparate Pay and Creates a Presumption of Discrimination under the Indirect Method.*

To establish a disparate pay claim under the indirect method, a plaintiff must prove that she was meeting the employer's legitimate business expectations, yet was paid lower wages than similarly situated male employees.  Jordan, 396 F. 3d at 832.  At this point, it is well established that Plaintiff was meeting Wal-Mart's expectations, or, at the very least, that a factual issue exists as to this factor.  Additionally, it is clear that when the male comparators were promoted past Plaintiff, they were paid higher wages.  As a result, the only question that remains is whether Plaintiff was similarly situated to her male counterparts.  If the answer is yes, Plaintiff has satisfied her burden of establishing a *prima facie* case of discrimination, creating a presumption that Plaintiff's lower pay was the result of discrimination.

Whether two individuals are similarly situated is a flexible, common sense, factual inquiry; precise equivalence is not the question.  Coleman, 667 F. 3d at 846.  "Whether a comparator is similarly situated is 'usually a question for the fact-finder,' and summary judgment is appropriate only when 'no reasonable fact-finder could find that plaintiffs have met their burden on the issue.'"  Id. at 846-47 (quoting Srail v. Village of Lisle, 588 F.3d 940, 945 (7th Cir. 2009)).  To satisfy her burden, the plaintiff must "show that the comparators (1) dealt with the same supervisor; (2) were subject to the same standards; and (3) engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them."  Id. at 847 (citations and quotations omitted).

Plaintiff has met her limited burden that her comparators are similarly situated.  At least three of the male comparators (Tabasky, Frankiewicz, and Zastrow) dealt with the same

28

supervisors – Mike Dooley and Chris Meidt. Plaintiff and the male comparators were required to meet the same standards for promotion. Finally, Plaintiff's conduct was not so different from the promoted male employees as to explain Wal-Mart's discrimination. Plaintiff had equal - if not more - retail and managerial experience than her male comparators, and she received the same performance ratings that the male comparators received when they were promoted.

### iii. *Defendant's Questionable Termination of Plaintiff Raises a Presumption of Discrimination under the Indirect Method*

To establish a *prima facie* case of discriminatory discharge, a plaintiff must establish that she was terminated despite meeting the company's legitimate expectations and similarly situated persons outside the class received more favorable treatment. <u>Burnell v. Gates Rubber Co.</u>, 647 F. 3d 704, 709 (7th Cir. 2011). It is well established that Plaintiff was terminated despite the fact that she was meeting Wal-Mart's legitimate expectations. Plaintiff also satisfies the final element of the *prima facie* case because similarly situated males received less discipline for more serious violations. Most notably, Frankiewicz was accused of theft, a serious violation of company policy, but was not fired. Plaintiff, on the other hand, was fired for violations of non-existent policies. Such diverging treatment establishes a *prima facie* case and creates a presumption that Defendant's termination of Plaintiff was discriminatory.

### iv. *Defendant's Nondiscriminatory Reasons are Pretextual.*

With Plaintiff successfully establishing a *prima facie* case of discrimination, the burden shifts to the defendant to establish a non-discriminatory reason for the disparate treatment. <u>Farrell</u>, 421 F. 3d at 613. Defendant's proffered rationale, however, is simply pretext. The only reason offered by Defendant to explain why it took Plaintiff ten years to be promoted to Assistant Manager, while her male comparators were promoted in less than two, was that the male comparators had better education. First, Zastrow did not have higher education at the time

29

he was promoted – he had a high school degree, just like Plaintiff. Second, a college education is only *one* of the three possible qualifications for promotion to Assistant Manager. Plaintiff more than satisfied the other two, yet was repeatedly denied a promotion.

Defendant also contends that Plaintiff was not promoted because her performance was lacking, but based on her annual reviews, Plaintiff received the exact same marks as her male comparators. If Plaintiff's supposed deficiencies prevented her from being promoted, then Defendant should not have promoted her male comparators either. Plaintiff, at the very minimum, had equal experience and qualifications to her male counterparts. Defendant's rationale should be rejected.

## CONCLUSION

The record demonstrates that no matter how hard Plaintiff worked, it was never going to be good enough. After over a decade of hard work it became clear to Plaintiff that she had two things working against her that she simply could not change: her sex and the fact that she dared to exercise her FMLA rights. Defendant's attempt to disguise its unlawful behavior by labeling Plaintiff as "ill-suited" is hardly credible in light of Plaintiff's lengthy employment history with Defendant. Furthermore, Plaintiff's negative performance rating and PIP came on the heels of her return from protected leave further undercutting Defendant's proffered reasons for termination. Because genuine issues of material fact remain with regard to Plaintiff's FMLA and Title VII claims, Plaintiff respectfully requests that Defendant's Motion for Summary Judgment be denied in its entirety.

30

Date:   November 6, 2013

NICHOLS KASTER, PLLP

_/s James H. Kaster_

James H. Kaster (MN #53946, WI #1001474)
Kate A. Fisher (MN #0392180)
80 South Eighth Street
4600 IDS Center
Minneapolis, Minnesota 55402-2242
Telephone:  (612) 256-3200
Fax:  (612) 338-4878
kaster@nka.com
kfisher@nka.com

KASTER LAW

Lucas J. Kaster (WI #1085284)
735 West Wisconsin Avenue
12th Floor
Milwaukee, Wisconsin  53233
Telephone: (414) 326-3279
lkaster@kaster-law.com

ATTORNEYS FOR PLAINTIFF